# **EXHIBIT D**

⚠️ Caution
As of: December 8, 2023 5:56 PM Z

# Emerald Town Car of Pearl River, LLC v. Phila. Indem. Ins. Co.

United States District Court for the Southern District of New York

April 12, 2017, Decided; April 12, 2017, Filed

No. 16 Civ. 1099 (NSR)

**Reporter**
2017 U.S. Dist. LEXIS 56805 *

EMERALD TOWN CAR OF PEARL RIVER, LLC, Plaintiff, -against- PHILADELPHIA INDEMNITY INSURANCE COMPANY and CAPACITY COVERAGE COMPANY OF NEW JERSEY, INC., Defendants.

## Core Terms

cancellation, insured, premium, allegations, notice, coverage, broker, negligence claim, motion to dismiss, insurance policy, breached, special relationship, provisions, handled, factual allegations, contract claim, misrepresentation, confirmed, inform

**Counsel:** [*1] For Emerald Town Car of Pearl River, LLC, Plaintiff: Donald Joseph Feerick, Jr, Feerick Lynch MacCartney, South Nyack, NY.

For Philadelphia Indemnity Insurance Company, Defendant: Jeffrey David Grossman, PRO HAC VICE, Adam Joseph Petitt, Stradley Ronon Stevens & Young, LLP, Philadelphia, PA.

For Capacity Coverage Company of NJ, Inc, Defendant: Brett A. Scher, LEAD ATTORNEY, Kaufman Dolowich & Voluck LLP, Woodbury, NY; Andrew Alan Lipkowitz, Miranda Sambursky Slone Sklarin Vervenioits, LLP(M'la), Mineola, NY; Anthony Proscia, Kaufman Dolowich & Voluck LLP, New York, NY.

**Judges:** NELSON S. ROMÁN, United States District Judge.

**Opinion by:** NELSON S. ROMÁN

## Opinion

### OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Emerald Town Car of Pearl River, LLC ("Emerald" or the insured) brings this action against its insurance provider, Defendant Philadelphia Indemnity Insurance Company ("Philadelphia" or the insurer), and its insurance broker, Defendant Capacity Coverage Company of New Jersey, Inc. ("Capacity" or the broker), for an alleged premature cancellation of a business automobile insurance policy covering Emerald's car service business and the ensuing shutdown of that business allegedly caused by the cancellation. [*2] Defendants have each submitted motions pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs allegations for failure to state a claim upon which relief may be granted.[1] For the following reasons, Philadelphia's motion to dismiss is DENIED and Capacity's motion is GRANTED.

## BACKGROUND

### I. Facts Alleged[2]

---

[1] Philadelphia seeks to dismiss Count III (negligence). (See Philadelphia's Mot. to Dismiss Count III, ECF No. 28; Philadelphia's Mem. in Supp. ("Insurer Mem."), ECF No. 29; Decl. Adam J. Petitt in Supp. ("Petitt Decl."), ECF No. 32; Pl. Mem. in Opp'n ("Insured Opp'n to Insurer"), ECF Nos. 26 & 30; Philadelphia's Reply ("Insurer Reply"), ECF No. 31; Pl. Sur-reply ("Insured Sur-reply"), ECF No. 39.) Capacity seeks to dismiss Counts II (breach of contract) & III (negligence). (See Capacity's Mot. to Dismiss, ECF No. 18; Capacity's Mem. in Supp. ("Broker Mem."), ECF No. 23; Decl. Brett A. Scher in Supp. ("Scher Decl."), ECF No. 22; Pl. Mem. in Opp'n ("Insured Opp'n to Broker"), ECF No. 25; Capacity's Reply ("Broker Reply"), ECF No. 24.)

[2] The Court assumes the truth of the facts alleged in Plaintiff's complaint, Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and considers documents which are either incorporated by reference, or integral to the claims asserted, therein. Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

2017 U.S. Dist. LEXIS 56805, *2

Plaintiff Emerald was a limited-liability company based in New York between December 16, 1999 and February 9, 2015 operating a "for-hire car service" with approximately eleven drivers on staff. (Am. Compl. ¶¶ 1, 13.) As part of Emerald's operations, it was required to have insurance coverage for its fleet of approximately nine vehicles. (Id. ¶¶ 13-14.) Defendant Philadelphia is alleged to be a Pennsylvania corporation that provides insurance, and Defendant Capacity is alleged to be a New Jersey corporation operating as an insurance broker. (Id. ¶¶ 2, 6, 15, 22.) Emerald was a client of Capacity and utilized its brokerage and policy services to communicate with Emerald's insurer, Philadelphia. (Id. ¶¶ 15-16.)

In February 2014, the parties entered into negotiations for insurance coverage that would indemnify Emerald and its customers in the event of loss due to bodily injury or property damage. ( [*3] Id. ¶ 17.) Defendants acknowledged Emerald's insurance needs and agreed to provide adequate coverage in that regard, and Emerald paid for such coverage. (Id. ¶¶ 18-19.) As a result, Defendants provided Emerald with a one-year term policy covering its business property and operations effective from March 1, 2013 through March 1, 2014. (Id. ¶¶ 19, 22.) In March, a renewal policy (No. PHPK1138483) for the next year was issued by Philadelphia through Capacity effective between March 1, 2014 to March 1, 2015. (Id. ¶ 23.) Pursuant to the "agreement" between Emerald and Defendants, Emerald sent its premium payment directly to Philadelphia, while Capacity handled the other aspects of the policy, such as submitting and receiving notices. (Id. ¶¶ 26-27.)

On November 13, 2014, Philadelphia allegedly mailed a notice of cancellation for non-payment of the policy premium. (Id. ¶¶ 28-29.) The notice stated $1,653.80 was overdue and that cancellation would be avoided if the overdue premium was paid within fifteen days of November 13. (Id. ¶¶ 30-31.) Otherwise, the policy would be cancelled on December 2, 2014. (Id. ¶¶ 28-29.)

Nevertheless, on December 1, Emerald received correspondence directly from [*4] Philadelphia indicating $3,496.04 was due on the policy by December 21. (Id. ¶ 34.) Emerald confirmed the amount due with a Philadelphia representative by phone who also confirmed it was not due until December 21. (Id. ¶ 35.) Similarly, on December 9, Defendants reported to the New York State Department of Motor Vehicles that the policy was effective until December 29, as confirmed by the agency's records from December 10, 2014. (Id. ¶¶ 37-38.)

Despite these representations, on December 15, Philadelphia informed Emerald that the policy had been cancelled on December 2. (Id. ¶¶ 39-40.) That day, Capacity informed Emerald via email that the cancellation occurred when the $1,653.80 was not received prior to December 1. (Id. ¶ 41.) Philadelphia confirmed the cancellation with Emerald by telephone later that afternoon. (Id. ¶ 42.) Capacity confirmed with Emerald the reason for the cancellation on December 17 and provided Emerald with a copy of the November 13 notice of potential cancellation, which Emerald had not previously received. (Id. ¶¶ 33, 44.) Capacity also relayed to Emerald that Philadelphia had decided not to reinstate the policy. (Id. ¶ 46.) Emerald asked Capacity to find replacement [*5] insurance. (Id. ¶ 47.)

As a result of Capacity's and Philadelphia's statements to Emerald, believing it no longer had business automobile insurance, Emerald was forced to shut down its operations, transfer its clients to other car service providers, liquidate its fleet of automobiles (beginning on December 28, 2014 and completed by January 4, 2015), terminate its employees, and shutter its business office. (Id. ¶¶ 49-54.) On January 14, 2015, after Emerald was out of business, Capacity informed Emerald that Philadelphia had reinstated the insurance policy. (Id. ¶ 55.)

Emerald filed for dissolution with the State of New York on February 9, 2015. (Id. ¶ 56.)

II. The Policy (No. PHPK1138483)

Plaintiff did not attach a copy of the policy to its complaint, though it specifically references it throughout its allegations. Defendant Capacity has provided a copy of the policy with its motion papers. (See Scher Decl., Ex. B ("Policy").) The Policy's relevant provisions support Plaintiff's allegations that the term of the policy was for March 1, 2014 through March 1, 2015, and that Emerald was the responsible party for making the premium payments. Additionally, the cancellation provision allows Philadelphia [*6] to cancel the policy, as relevant here, 15 days after providing notice of cancellation for non-payment. The Policy indicates that the insurer would mail the insured a copy of the notice at its last known address.

### III. Procedural History

This action was removed from New York state court to this Court on February 12, 2016. (*See* Notice of Removal, ECF No. 1.) On May 16, 2016, Plaintiff filed an amended complaint, which is the operative complaint in this action. (Am. Compl., ECF No. 17.) Defendants' respective motions to dismiss were fully briefed as of August 11, 2016.

### STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *accord* Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not [*7] bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." Id. at 662. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013) (citation omitted). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### DISCUSSION

The allegations in this diversity action[3] are fairly straightforward: Plaintiff's insurer, Defendant Philadelphia, cancelled Plaintiff's policy despite sending conflicting messages about how much was due and by what date; and Plaintiff's insurance broker, Defendant Capacity, only informed Plaintiff of the pre-cancellation notice after the fact. Based on these allegations, [*8] Emerald alleges breach of contract (Counts I & II) and negligence (Count III) against Philadelphia and Capacity. On the basis of their briefs, the parties have all impliedly agreed that New York law governs the claims presented.[4] Philadelphia moves to dismiss the

---

[3] Plaintiff, who seeks at least $500,000, was a New York based company, while the Defendants are out-of-state corporations: Philadelphia is based in Pennsylvania, and Capacity is based in New Jersey. Although the Defendants have waived any objection to asserting personal jurisdiction over them in this action, the Court notes that specific jurisdiction over the Defendants is appropriate in this case: "where an insurer located elsewhere contracts to insure a risk within New York State, courts have held that the insurer has contracted to perform a service in New York, and therefore [such allegations constitute] a prima facie showing that personal jurisdiction is proper . . . under section [N.Y. C.P.L.R. §] 302(a)(1)." Blau v. Allianz Life Ins. Co. of N. Am., 124 F. Supp. 3d 161, 179 (E.D.N.Y. 2015) (providing a detailed analysis of asserting long-arm jurisdiction over out-of-state insurer).

[4] "A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits." McPhee v. GE Int'l, Inc., 736 F. Supp. 2d 676, 679 (S.D.N.Y. 2010), *aff'd*, 426 F. App'x 33 (2d Cir. 2011); *see* Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). "Under New York choice-of-law rules, 'where the parties agree that [a certain jurisdiction's] law controls, this is sufficient to establish choice of law.'" Alphonse Hotel Corp. v. Tran, 828 F.3d 146, 152 (2d Cir. 2016) (modification in original and citation omitted). Such an agreement between the parties can extend to contract and tort claims under the principle that implied consent to use a forum's law is sufficient to establish choice of law. *See* Hannex Corp. v. GMI, Inc., 140 F.3d 194, 203 n.7 (2d Cir. 1998) (citing Tehran-Berkeley Civil & Environmental Engineers v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989)) (applying New York law to plaintiff's tort claims since the parties "both argue[d] New York law in their briefs"); *see also* Larsen v. A.C. Carpenter, Inc., 620 F. Supp. 1084, 1103 (E.D.N.Y. 1985), *aff'd*, **800 F.2d 1128 (2d Cir. 1986)** (court applied New York law to contractual and statutory claims where "the parties refer[red] to the law of

negligence claim, while Capacity moves to dismiss all of the causes of action alleged.

At the outset, the Court notes that although this complaint is premised on an alleged cancellation due to non-payment of premiums, it is silent with regard to whether Emerald paid or did not pay the premium at issue. The closest allegation speaking to this issue is Plaintiff's blanket statement that "[n]o act or negligence on [its] part contributed to the happening of the event." (Am. Compl. ¶ 77.) The absence of an allegation on this point is all the more conspicuous since such information is solely in Plaintiff's possession and is the deciding factor for most of Emerald's claims.

I. Negligence

Both Philadelphia and Capacity argue that the "economic loss rule" or doctrine bars Emerald's negligence claims. (*See* Insurer Mem. at 6-8; Broker Mem. at 14-15.) [*9] That rule provides "that an end-purchaser of a *product* is limited to contract remedies and may not seek damages in tort for economic loss against a *manufacturer*"—a limitation in products liability actions designed to avoid having "contract law [] drown in a sea of tort." 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc., 96 N.Y.2d 280, 288 n.1, 750 N.E.2d 1097, 727 N.Y.S.2d 49 (2001); E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 866, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986). That *per se* bar, however, does not apply outside of that context. See 532 Madison Ave., 96 N.Y.2d at 288 n.1; *but see* Hydro Inv'rs, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 16-18 (2d Cir. 2000) ("the doctrine survives . . . despite the increasing relaxation of privity rules, [but] it is not always applied in negligence cases.").

Rather, New York courts perform a traditional tort analysis to determine whether the asserted "negligence claims *based on economic loss alone* fall beyond the scope of the duty owed them by [the] defendants." 532 Madison Ave., 96 N.Y.2d at 292 (emphasis added).[5] Put

another way, "[a] negligence claim may be brought provided that the plaintiff alleges that 'a legal duty independent of the contract itself has been violated.'" Dorking Genetics v. United States, 76 F.3d 1261, 1269 (2d Cir. 1996) (quoting Clark—Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 389, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987)). Emerald's negligence claims are indeed based solely on economic loss—the injury alleged is the shutdown of Emerald's car service due to the infeasibility of continuing its operations without the necessary commercial automobile insurance. The viability of the claims, therefore, hinges on whether either [*10] Defendant owed Emerald a duty which encompassed the acts which led to that loss.

a. Philadelphia

Plaintiff summarizes its negligence claims against Philadelphia as stemming from the insurer's "complete[] and wrongful[] cancel[ing] [of] Emerald's insurance policy without warning" and "with reckless disregard." (*See* Insured Opp'n to Insurer at 8-9.) Viewed as it is presented, as a standard negligence claim, it fails because there is no special duty of care that exists between an insurer and the insured beyond the provisions of the contract—the insurance policy. New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 319-20, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995) (claim that defendants were "careless, negligent, reckless and vindictive" in their handling of plaintiff's claim under an insurance policy did not provide a basis for inferring an independent duty beyond the implied covenant of good faith and fair dealing implicit in every contract); *see also* Polidoro v. Chubb Corp., 386 F. Supp. 2d 334, 337 (S.D.N.Y. 2005) ("Plaintiff's negligence claim cannot stand independent of her contract claim").

But as Emerald aptly points out, there is a "limited exception to New York's barrier against recovery of economic loss . . . for claims of negligent misrepresentation." Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y., 734 F. Supp. 2d 368, 379 (S.D.N.Y. 2010) (viewing the plaintiff's "'negligence and/or professional negligence' claim [as] one for negligent misrepresentation"). [*11] "[A] defendant is liable 'where there is carelessness in imparting words upon which others were expected to rely and upon which they did act or failed to act to their damage,' provided that 'such information' was 'expressed directly,

---

[5] This may be little more than a matter of semantics, Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y., 734 F. Supp. 2d 368, 378 n.15 (S.D.N.Y. 2010) ("the decision as to which terminology to use appears to be of little practical importance, and courts routinely overlook the formal distinction"), but employing the proper framework is necessary to avoid over-simplifying the analysis of Plaintiff's negligence claims.

2017 U.S. Dist. LEXIS 56805, *11

with knowledge or notice that it will be acted upon, to one to whom the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all.'" *Id.* n.18 (quoting *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 208 (2d Cir. 2000). In other words, the duty that Philadelphia owed to Emerald may have increased when it allegedly made, albeit negligently, misrepresentations regarding the premium due date under the policy.

Emerald's claim for "negligence and malpractice," (Am. Compl. ¶ 76), can similarly be viewed as one for negligent misrepresentation, and the pleadings plausibly allege such a claim under New York law, the elements of which are that:

> (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff [*12] intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

*Id.* (quoting *Hydro Investors*, 227 F.3d at 20). A "special relationship" may exist where "the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Icahn Sch. of Med. at Mt. Sinai v. Health Care Serv. Corp.*, No. 16 Civ. 8756 (JSR), 234 F. Supp. 3d 580-, 2017 U.S. Dist. LEXIS 22416, 2017 WL 635648, at *2 (S.D.N.Y. Feb. 15, 2017) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263, 675 N.E.2d 450, 652 N.Y.S.2d 715 (1996)) (courts also consider "whether the person making the representation held or appeared to hold unique or special expertise" and "whether a [] relationship of trust or confidence existed between the parties").

It is a fair inference that Philadelphia was aware that Emerald would use and reply on the premium due date that the insurer provided: undoubtedly, an insured supplies a particular date because it hopes to receive payment by or before that date. Yet, Philadelphia indicated that payment was *not due* under the policy until December 21, 2015 (Am. Compl. ¶¶ 34-35), despite planning to cancel the policy by December 2 as a result of the first allegedly missed premium (*id.* ¶¶ 28-29). Emerald waited to pay based on that representation only to find out on December 15 that the policy had been cancelled, as planned, [*13] on December 2. (*Id.*

¶¶ 33, 39-44.) At this stage, Emerald's decision in that regard cannot be deemed unreasonable. The alleged catastrophic result of waiting, however, was that Emerald had to close its business. (*Id.* ¶¶ 49-54.) Given that Philadelphia, as Emerald's insurer, had provided an insurance policy covering a critical aspect of Plaintiff's business operations, it was under "a duty . . . to act with care if [it] act[ed] at all" when it represented a different premium due date to Plaintiff. *AUSA Life Ins.*, 206 F.3d at 208 (quoting *White v. Guarente*, 43 N.Y.2d 356, 363-64, 372 N.E.2d 315, 401 N.Y.S.2d 474 (1977)); *cf. Icahn*, 2017 U.S. Dist. LEXIS 22416, 2017 WL 635648, at *2 (insufficient allegations supported claim that insurer had a duty to give correct information to hospital where insured patients received treatment).

Thus, the duty owed to Emerald by Philadelphia is broad enough to encompass the economic loss endured by the insured as a result of the insurer's potentially negligent misrepresentation even though the duty arising out of the insurance policy would not normally extend to simple acts of negligence coextensive with contractual breaches.

### b. Capacity

Plaintiff characterizes its negligence claims against Capacity as premised on the broker's "fail[ure] to obtain timely replacement insurance" despite "kn[owing] the damages that would result without insurance coverage [*14] on Emerald's business" and failure to inform Emerald about the pre-cancellation notice of November 13. (Insured Opp'n to Broker at 19-20.)[6] But Plaintiff's allegations against Capacity fail to demonstrate the existence of a duty broad enough to encompass these acts.

"[I]nsurance agents [in New York] have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so; however, they have no continuing duty to advise, guide or direct a client to obtain *additional coverage*." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 388 (2d Cir. 2006) (quoting *Murphy v. Kuhn*, 90 N.Y.2d 266, 270, 682 N.E.2d 972, 660

---

[6] Emerald also argues that "Capacity failed to rescind the notice and reinstate the Policy," but as explained, *infra* n.7, the Court cannot plausibly infer on the facts alleged that Capacity had such authority or acted as an agent for Philadelphia. (*See also* Broker Reply at 4-5.)

2017 U.S. Dist. LEXIS 56805, *14

N.Y.S.2d 371 (1997)) (emphasis in original); see also American Bldg. Supply Corp. v. Petrocelli Group, Inc., 19 N.Y.3d 730, 735, 979 N.E.2d 1181, 955 N.Y.S.2d 854 (2012) (same). Thus, under the regular duty owed by a broker to an insured, Plaintiff's negligence claims fail: Capacity had no continuing duty to advise, guide, or direct Emerald with regard to whether Emerald was failing to pay its premium. Moreover, although Emerald does allege that it asked Capacity to provide replacement coverage, the allegations do not point to a delay on Capacity's part to inform Emerald that such coverage could not be found or that Philadelphia was unwilling to reinstate the policy. Rather, once Philadelphia reversed itself and reinstated the policy, Capacity informed Plaintiff of [*15] that turn of events.

Nevertheless, "a broker may be liable under a theory of negligence for failing to inform an insured client about the cancellation of an insurance policy" so long as the insured is not concurrently negligent. GlobalNet, 449 F.3d at 387 (citing Kamen Soap Prods. Co., Inc. v. Prusansky & Prusansky, Inc., 5 A.D.2d 620, 623, 173 N.Y.S.2d 706 (1st Dep't 1958); Holskin v. Hurwitz, 211 A.D. 731, 732-33, 208 N.Y.S. 38 (1st Dep't 1925)). Invoking this continuing duty requires the existence of an "exceptional situation[] that [] give[s] rise to a special relationship, thereby creating an additional duty of advisement[.]" See Joseph v. Interboro Ins. Co., 144 A.D.3d 1105, 1108, 42 N.Y.S.3d 316 (2d Dep't 2016). Such exceptional circumstances would include allegations that:

> (1) the agent receives compensation for consultation apart from payment of the premiums; (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent; or (3) there is a course of dealing . . . which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on.

Id. (citations omitted).

Here, there are no allegations setting forth grounds for inferring the existence of a special relationship between Emerald and Capacity such that Capacity should be held liable for failing to advise Emerald as to the pending cancellation. See id. Indeed, the complaint is bereft of specific allegations describing [*16] the nature of the relationship between Plaintiff and Capacity. In full, Emerald alleges 1) it was a client of Capacity's (Am. Compl. ¶ 15), 2) Capacity handled notices under the policy (id. ¶¶ 26-27), 3) Capacity acted as an agent for Philadelphia (id. ¶ 9), and 4) Capacity was authorized by Philadelphia to issue policies and notices on its behalf (id. ¶ 11). Rather than a special relationship, these allegations describe a standard insurance broker relationship. Cf. Kaufmann v. Leatherstocking Co-op. Ins. Co., 52 A.D.3d 1010, 1012-13, 861 N.Y.S.2d 423 (3d Dep't 2008) (on summary judgment evidence showed no special relationship present to support a claim that broker was "negligent in failing to inform [plaintiff] when his payments were past due so that he could avoid cancellation of the policy").[7]

Moreover, the total absence of information surrounding whether the subject premium was actually paid on time bolsters the conclusion that any Capacity-specific allegations are lacking. Cf. Fink, 714 F.3d at 741 (the "gaping hole in [plaintiffs'] submission [was] conspicuous" where representations made in allegedly deceptive advertisements were "pivotal" to their claims, yet plaintiffs did not provide examples of the advertisements). The only reasonable inference the Court can logically draw from the other [*17] specific allegations made is that the premium was not paid, based on the alleged notice of failure to pay which stated approximately $1,650 was due and the subsequent invoice for payment which indicated approximately $3,500 (a little more than double) was due. Therefore, on the basis of the pleadings, Emerald cannot proceed on these claims "because [Capacity] was not the cause of the cancellation of coverage," rather the only viable inference is that Emerald's failure to pay the premium on time in accordance with the

---

[7] Although the Court concludes there is no viable negligence claim alleged against Capacity, it is worth noting that Emerald's conclusory allegation that Capacity acted as an agent for Philadelphia with regard to the cancellation of the policy, (see Am. Compl. ¶ 9), does not suffice to plausibly allege Philadelphia is vicariously liable for Capacity's alleged negligence. An essential element of an agency relationship is that the agent acts subject to the principal's direction and control. See Mouawad Nat. Co. v. Lazare Kaplan Int'l Inc., 476 F. Supp. 2d 414, 422 (S.D.N.Y. 2012). The only allegations concerning direction and control are in favor of Emerald, not Philadelphia, directing Capacity, and thus do nothing to overcome the usual presumption that "[a] broker is the agent of the insured and not the insurer." Meade v. Finger Lakes-Seneca Co-op Ins. Co., 184 A.D.2d 952, 953, 584 N.Y.S.2d 937 (3d Dep't 1992). Indeed, the allegations in the complaint do not allege Capacity had any involvement in the cancellation of the policy, and instead allege that Emerald was primarily responsible for paying the premium. (Am. Compl. ¶ 26).

2017 U.S. Dist. LEXIS 56805, *17

terms of the policy led to the cancellation. GlobalNet, 449 F.3d at 388 (same result where insured was "fully aware of the monthly payment schedule, its obligations to make the monthly premium payments, and the consequences of its failure to pay the premiums each month").

## II. Breach of Contract

### a. Philadelphia

Philadelphia has not sought to dismiss the breach of contract claims asserted against it (Count I), and at this juncture the Court views these claims as adequately alleged—though just barely so. The Policy provides that notices of cancellation are to be sent to both the insured and the broker, which may or may not have happened, though Emerald indicates it did not receive the November 13 notice [*18] until Capacity provided it post-cancellation. (*See* Policy; Am. Compl. ¶¶ 33, 44.) Although the Court cannot stretch the pleadings to the point of giving Emerald the unstated and contradictory inference that it paid the premium on time, it is reasonable to infer the additional allegation that Philadelphia breached the terms of the policy by failing to mail or deliver the notice to Emerald.

### b. Capacity

In contrast, the breach of contract claims against Capacity (Count II) are woefully inadequate. Under New York law, the elements of a claim for breach of contract are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks omitted).

A complaint "fails to sufficiently plead the existence of a contract" if it does not provide "factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms." Valley Lane Indus. Co. v. Victoria's Secret Direct Brand, 455 F. App'x 102, 104 (2d Cir. 2012). Conclusory allegations that a contract existed or that it was breached do not suffice. *Compare Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312 (S.D.N.Y. 2014) (breach of contract claim dismissed where existence of contract was only pled in a "conclusory fashion" and the complaint [*19] "fail[ed] to allege any specific provisions of the contract" that were breached), with Mazzola v. Roomster Corp., 849 F. Supp. 2d 395, 403 (S.D.N.Y. 2012) ("plaintiff [] sufficiently alleged that the defendants breached their agreement" and its cancellation provision, as set forth in the agreement attached to the complaint, by "prevent[ing] the plaintiff from canceling her membership and avoiding subsequent charges"); *see also* Global Packaging Servs., LLC v. Global Printing & Packaging, No. 15 Civ. 7747 (NSR), 2017 U.S. Dist. LEXIS 50405, 2017 WL 1232731, at *3 (S.D.N.Y. Mar. 31, 2017) (despite neither party providing the agreement at issue for the Court's consideration, plaintiff adequately alleged the existence of an agreement, which terms were breached, by the defendant).

The only allegations of any agreement between the two are contained in paragraphs 16, 26, and 27 of the amended complaint: "In February [] 2014, [they] entered into a brokerage agreement, express or implied, whereby Capacity promised to procure, furnish, and maintain adequate insurance for Emerald at all times, and was obligated to communicate with [Philadelphia] on Emerald's behalf, including providing notice and/or cancelling any notice of revocation of insurance coverage" (Am. Compl. ¶¶ 16, 27), and "[p]ursuant to the agreement, Emerald's premium payment was sent directly to [Philadelphia], and Capacity handled all other policy services with respect to [the] Policy" [*20] (*id.* ¶ 26). The nature of the agreement is unclear: the complaint does not specify whether it was oral or written, only that it was either "express or implied." Furthermore, these vague provisions only reinforce the conclusion that Capacity acted as Emerald's agent, rather than Philadelphia's, since it was obligated to act "on Emerald's behalf" by providing or cancelling notices, ostensibly sent by Emerald, regarding termination of the policy. Finally, simply alleging "Capacity handled all other policy services" has no contours, making it impossible for the Court to consider what the material "policy services" might include.

The alleged breach also demonstrates the dearth of information regarding the contract: "Capacity breached the provisions of the brokerage agreement, either expressed or implied, by unjustifiably failing to discharge the duties imposed by the agreement through either fault or neglect and/or by failing to exercise due care, resulting in loss and damage to Emerald." (Am. Compl. ¶ 69.) No "provision" relevant to handling a notice

2017 U.S. Dist. LEXIS 56805, *20

indicating that the party responsible for premium payment—Emerald—had not paid the premium is defined. And the allegation of a breach, "either [*21] by fault or neglect" or failure to "exercise due care," sound like reiterations of Plaintiff's negligence claim rather than an explicit breach of agreed-upon terms of a contract.

Therefore, the breach of contract claims against Capacity must be dismissed, because even construing the allegations liberally they fail to meet the pleading standard. *See, e.g., Blau v. Allianz Life Ins. Co. of N. Am., 124 F. Supp. 3d 161, 185 (E.D.N.Y. 2015)* (complaint dismissed where allegations regarding an alleged insurance policy "lack[ed] any specifics concerning dates, timing, amounts, or the contractual provisions at issue"); *Frank v. N.Y. Cas. Co.*, 2 A.D.2d 835, 835, 155 N.Y.S.2d 497 (1st Dep't 1956) (complaint dismissed where plaintiff "fail[ed] to allege the date of the renewal of the policy [and] the payment of the requisite premiums").

### III. Leave to Amend

It is within the Court's discretion to *sua sponte* grant leave to amend. *See Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 106 (2d Cir. 1998); *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008). "Given the nature of the factual gaps in the [c]omplaint, [Emerald] may be able to cure [some of] the issues by amendment." *Blau*, 124 F. Supp. 3d at 186. If Plaintiff corrects the vague and conclusory nature of its allegations, then its claims against Capacity may be viable. Therefore, the Court hereby exercises its discretion and *sua sponte* grants Plaintiff leave to file a second amended complaint that conforms with this Opinion. The Court cautions Plaintiff, however, to remain [*22] cognizant of its Rule 11(b) obligations.

### CONCLUSION

For the foregoing reasons, Defendant Philadelphia's motion to dismiss is DENIED and Defendant Capacity's motion to dismiss is GRANTED: all of Plaintiffs claims against Capacity are dismissed without prejudice, but its claims against Philadelphia survive as indicated. The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 18 & 28.

Plaintiff shall file any amended complaint in conformance with the above on or before May 3, 2017.

Defendants shall answer or seek a pre-motion conference on any potential non-frivolous and non-repetitive motions to dismiss by June 5, 2017. The parties are directed to appear in person at an initial pre-trial conference on June 16, 2017 at 10:30 a.m.

Dated: April 12, 2017

White Plains, New York

SO ORDERED:

/s/ Nelson S. Román

NELSON S. ROMÁN

United States District Judge

**End of Document**